STUBBS ALDERTON & MARKILES, LLP|
Michael A. Sherman (Bar No. 94783)
masherman@stubbsalderton.com
David S. Gubman (Bar No. 66047)
david.gubman@gmail.com
Harris L. Cohen (Bar No. 119600)
Hcohen00@aol.com
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, CA  91403
Telephone:  818.444.4500
Facsimile:  818.444.4520

McCLELLAND ADVOCACY
Michael D. McClelland (Bar No. 204223)
mdm@mcclellandadvocacy.com
6520 Lonetree Boulevard, Suite 134
Rocklin, CA  95765
Telephone:  916.847.6891
Facsimile:  916.588.1586

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiffs
LORENA ARMIJO, KRISTEN ANDRICH
And RALPH MAYER, M.D., INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| Lorena Armijo, an individual; Kristen Andrich, an individual; Ralph Mayer, M.D., Inc., a California professional corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ILWU-PMA COASTWISE INDEMNITY PLAN, an employee health and welfare plan formed pursuant to and subject to the Employee Retirement Income Security Act; PACIFIC MARITIME ASSOCIATION, an association; MICHAEL H. WECHSLER, individually and in his capacity as a Trustee of ILWU-PMA Coastwise Indemnity Plan; ROBERT L. STEPHENS, | **CASE NO. 15-cv-1403** <br><br> **COMPLAINT FOR:** <br><br> 1.   RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132(a)(l)(B) <br> 2.   REMOVAL OF FIDUCIARIES AND DAMAGES FOR BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. §1132(a)(2) <br> 3.   BREACH OF EXPRESS CONTRACT <br> 4.   BREACH OF IMPLIED CONTRACT <br> 5.   FRAUD <br> 6.   EQUITABLE ESTOPPEL <br> 7.   SERVICES RENDERED |

1
2
3
4
5
6
7
8

individually and in his capacity as a Trustee of ILWU-PMA Coastwise Indemnity Plan; JAMES C. MCKENNA, individually and in his capacity as a Trustee of ILWU-PMA Coastwise Indemnity Plan; ZENITH AMERICAN SOLUTIONS, INC., a corporation, as an entity and a fiduciary of ILWU-PMA Coastwise Indemnity Plan; TC3 HEALTH, INC., a corporation, individually and as a fiduciary of ILWU-PMA Coastwise Indemnity Plan and, CIGNA, INC., a corporation,

9                    Defendants.

10
11
12

**DEMAND FOR JURY TRIAL**

        Plaintiffs, Lorena Armijo and Kristin Andrich (collectively the "Participant Plaintiffs") and Ralph Mayer, M.D., Inc., a California professional medical corporation ("Mayer Inc." or the "Provider Plaintiff"), collectively either "Plaintiffs" or the "Proposed Class Representatives"), for their complaint for, *inter alia*, violations of the Employee Retirement Income Security Act ("ERISA"), hereby aver as follows:

**PARTIES**

        1.    Plaintiff Lorena Armijo ("Armijo") is an individual, and a resident of the Western Division of this Judicial District.  Armijo is the spouse of a member of the International Longshore & Warehouse Union ("ILWU"), Local 13 who is a participant, within the meaning of ERISA (a "Participant") in the  ILWU-PMA Coastwise Indemnity Plan (the "Plan"), and Armijo is a Beneficiary of the Plan within the meaning of ERISA (a "Beneficiary").

        2.    Plaintiff Kristen Andrich ("Andrich") is an individual, and a resident of the Western Division of this Judicial District.  Andrich is the spouse of a member of ILWU, Local 13, who is a Participant in the Plan, and Andrich is a Beneficiary of the Plan.

3.     Plaintiff Ralph Mayer, M.D., Inc. ("Mayer Inc.") is a California professional medical corporation through which Dr. Ralph B. Mayer, M.D. ("Dr. Mayer") practices medicine.  Dr. Mayer is an individual licensed to practice medicine in the State of California, with a specialty in obstetrics and gynecology, with a surgical sub-specialty of urogynecology.  Mayer Inc. has its principal place of business in Los Angeles, in the Western Division of this Judicial District.

4.     Dr. Mayer rendered covered professional medical services for Participants and Beneficiaries through Mayer Inc. for which Mayer Inc. was not paid by the Plan, and the Individual Plaintiffs incurred covered medical expenses that were not paid by the Plan.  Each of the Class Representatives has Article III standing in that:

a.     Each of the Class Representatives has suffered an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical;

b.     the injury is traceable to the challenged action of the Defendants; and

c.     it is likely that the injury will be redressed by a favorable decision.

5.     Mayer Inc., in each instance at issue here, is the assignee of all claims, rights, causes of action and remedies available to its Participants and Beneficiaries, including their rights under ERISA, pursuant to a written assignment (each, an "Assignment" and collectively, the "Assignments").  The following is language from a typical Assignment, and the Provider Plaintiff is informed and believes, and based thereon avers, that all similarly situated Providers have Assignments which are substantively the same:

"In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or

employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such providers managed care network participation status. I understand that I am financially responsible for all charges regardless of any applicable insurance or benefit payments.  I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA.  I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies.  I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.  I hereby convey to the above named provider(s), to the full extent permissible under the law and under any applicable employee group health plan(s), insurance policies or liability claim, any claim, chose in action, or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s) under any applicable insurance policies, employee benefits plan(s) or public policies with respect to medical

STUBBS
ALDERTON &
MARKILES,
LLP

COMPLAINT

expenses incurred as a result of the medical services I received from the above named provider(s), and to the full extent permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including, but are not limited to, (1) obtaining information about the claim to the same extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses.  Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws.  A photocopy of this assignment is to be considered as valid as the original.  I have read and fully understand this agreement. Should this assignment be prohibited in part or in whole under any anti-assignment provision of my policy/plan, please advise and disclose to my providers [name deleted] in writing such anti-assignment provision within 30 days upon receipt of my assignment, otherwise this assignment should be reasonably expected to be effective and such anti-

assignment is waived.  This assignment will remain in effect until revoked by me in writing.  A photocopy of this assignment is to be considered as valid as the original.  I have read and fully understand this agreement."

6.     The Assignments are effective to transfer from the Participants and Beneficiaries to their respective Providers all of the claims, rights, causes of action and remedies of the Participants and Beneficiaries, including each cause of action asserted herein on behalf of Providers.  Plaintiffs are informed and believe, and based thereon aver, that such Assignments are not barred by the Plan but that, even if the Plan purported to bar such Assignments, that bar would be void or voidable because:

a.     The Assignments make the Provider the authorized Representative of the respective Participants and Beneficiaries for purposes of asserting a benefit, *i..e.*, a payment under the Plan, or pursuing an appeal from the denial of any benefit.  Under regulations adopted pursuant to ERISA, found at 29 C.F.R. §2560.503-1(b)(4), no plan may "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination."

b.     The Plan has dealt directly with Providers such as Mayer Inc. without regard to whether there is any assignment, including but not limited to pre-authorizing services or procedures, and by paying claims directly to Providers without contacting, consulting or obtaining any input from the Participants and Beneficiaries.  Based on that course of conduct, Providers have relied on their right to assert claims directly with the Plan or its Third Party Administrator ("TPA") in continuing to render services (including providing use of a facility) or perform procedures for Participants and Beneficiaries.  By reason of the foregoing, the Plan,

and therefore the TPA, is estopped from asserting that claims for reimbursement for medical services or procedures are subject to any anti-assignment provision in the Plan.

        c.     At no time during the dealings between the Provider and Defendants did Defendants ever state that a specific reason for any adverse benefit determination was an anti-assignment provision, nor did they reference a specific anti-assignment provision in any Plan document.

        d.     By reason of the Plan's continuing course of conduct in not asserting or relying on any anti-assignment provision, the Plan has waived any arguable right now to assert or rely upon any anti-assignment provision in the Plan.

    7.    Defendant Pacific Maritime Association ("PMA") is an employer bargaining association, which engages in collective bargaining on behalf of various employers of ILWU members, including cargo carriers, terminal operators and stevedores, with facilities along the Pacific coast of the United States and Canada, including employers located within the Western Division of this Judicial District. Plaintiffs are informed and believe, and thereon aver, that PMA's headquarters are in San Francisco, California, but that it and its member employers do business in the Western Division of this Judicial District.

    8.    Non-party International Longshore and Warehouse Union ("ILWU") is a labor union representing primarily dockworkers in Pacific Ocean ports of the United States and Canada, with its headquarters in San Francisco, California. The ILWU has locals, numbers 13, 63, and 94, covering the ports of San Pedro and Los Angeles, and represents thousands of longshoremen and dockworkers employed at those ports and at other ports along the Pacific Ocean, including in California, Washington, Oregon, Alaska and Hawaii. The ILWU is subject to various federal laws governing labor unions, including without limitation the National Labor Relations Act, the Taft-Hartley Act, and ERISA.

9.     Together, ILWU and PMA created Defendant ILWU-PMA Coastwise Welfare Plan (the "Plan").  The Plan is an employee health and welfare benefit plan subject to ERISA, which provides, *inter alia*, medical and other benefits to present and former ILWU members ("Participants") and their immediate families ("Beneficiaries").  The Plan is jointly administered by representatives of ILWU and PMA, through a group of six Trustees (the "Board"), three selected by ILWU (the "ILWU Trustees") and three selected by PMA (the "PMA Trustees").

10.     Plaintiffs are informed and believe, and based thereon aver, that: Defendants Michael H. Wechsler, Robert L. Stephens and James C. McKenna are the PMA Trustees; each of the PMA Trustees is a resident of the State of California; and each of the PMA Trustees, through his service on the Board and otherwise, transacts substantial business in the Western Division of this Judicial District, such that each of the PMA Trustees is subject to the jurisdiction of this Court.

11.     Plaintiffs are informed and believe, and based thereon aver, that: Defendant Zenith American Solutions, Inc. ("Zenith") is a corporation the precise nature of which is unknown to Plaintiffs, with its principal place of business in Covina, California; and Zenith transacts substantial business in the Western Division of this Judicial District, such that Zenith is subject to the jurisdiction of this Court.  Zenith acts as the third party administrator ("TPA") of the Plan, processing claims for benefits owing to Participants, Beneficiaries and Providers pursuant to the Plan.  Zenith became the TPA of the Plan effective as of January 1, 2013.

12.     Plaintiffs are informed and believe, and based thereon aver, that: Defendant TC3 Health ("TC3") is an entity the precise nature of which is unknown to Plaintiffs, with its principal place of business in Irvine, California; TC3 transacts substantial business in the Western Division of this Judicial District, such that TC3

1   is subject to the jurisdiction of this Court; and TC3 provides "cost containment

2   solutions," including payment integrity analytics, clinical code editing and out-of-

3   network claims cost management to payers and TPA's, including the Plan and

4   Zenith.  Zenith purportedly retained TC3 to , *inter alia*, provide pre-payment fraud

5   detection and prevention for the Plan.

6         13.    Plaintiffs are informed and believe, and based thereon aver, that:  non-

7   party Innovative Care Management, Inc. ("ICM") is a corporation the precise nature

8   of which is unknown to Plaintiffs, with its principal place of business in Portland,

9   Oregon; ICM is authorized by the Plan to act and does act on behalf of the Plan in

10  reviewing Providers' requests for pre-authorization, and provides pre-authorization

11  and determinations of medical necessity on behalf of the Plan.  For all Participants

12  and Beneficiaries at issue in this case, ICM's pre-authorization language states

13  substantially as follows:

> "An Innovative Care Management registered nurse has
> reviewed and authorized your requested medical services
> under the terms of the Coastwise Indemnity Plan subject
> to the provisions contained in the following paragraph.
> Please keep this letter as your documentation for the
> services and authorizations given regarding your case.
> **This authorization serves as a directive to the**
> **Coastwise Claims Office to pay for the above**
> **approved services, but does not determine the amount**
> **paid on your claim**."  (Emphasis in original.)

25        14.    Providers dealing with the Plan are aware that ICM provides pre-

26  authorization in substantially this language to Providers rendering services to

27  Participants and Beneficiaries; and the TPA, the Plan, and the PMA Trustees are

1   aware that ICM makes such determinations and that ICM's determinations are

2   relied upon by Providers in deciding to render services to Participants and

3   Beneficiaries.  By reason of this agency relationship and the history of reliance by

4   Participants, Beneficiaries and Providers on the determinations of ICM made on

5   behalf of the Plan, which is known by Defendants, the determinations of ICM are

6   binding on the Plan.

7        15.    Plaintiffs are informed and believe, and based thereon aver, that

8   Defendant Cigna, Inc. ("Cigna") is a corporation the precise nature of which is

9   unknown to Plaintiffs; and that at all relevant times prior to 2013, Cigna was the

10  TPA for the Plan, and also maintained a network of providers for Plan Participants

11  and Beneficiaries.

12                    **JURISDICTION AND VENUE**

13       16.    This is a civil action for damages, injunctive and other equitable relief,

14  for violations of the Employee Retirement Income Security Act ("ERISA"), 29

15  U.S.C. section 1001, *et seq.*  Plaintiffs also assert claims for breaches of fiduciary

16  duties owed to Plan Participants and their Beneficiaries, including for damages and

17  for removal of the PMA Trustees, Zenith and TC3 as fiduciaries of the Plan, as a

18  result of such breaches; and, to the extent not preempted by ERISA, for claims by

19  Providers for fraud, for breaches of express and implied contracts, and for

20  promissory estoppel and common counts under the laws of the State of California.

21       17.    This Court has subject matter jurisdiction under 28 U.S.C. section

22  1331, because this civil action arises under the Constitution and laws of the United

23  States; and under 29 U.S.C. section 1332(e)(1), because this is an action to enforce

24  under obligations owing under ERISA.  This Court further has subject matter

25  jurisdiction under 28 U.S.C. section 1367 (a) because all other claims asserted in

26  this civil action are so related to claims within the original jurisdiction of this Court

27

28

STUBBS
ALDERTON &
MARKILES,
LLP

10                                    COMPLAINT

that they form part of the same case or controversy under Article III of the United States Constitution.

18.     Venue is proper in this district and division pursuant to 28 U.S.C. section 1391 (b), because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Western Division of this Judicial District, and because one or more of the Defendants conducts a substantial amount of business in the Western Division of this Judicial District; and pursuant to 29 U.S.C. section 1132(e)(2), because Defendants' violations of ERISA occurred in the Western Division of this Judicial District, and because one or more of the Defendants  conducts a substantial amount of business  in the Western Division of this Judicial District.

## BACKGROUND

### Replacing Cigna

19.     In their 2008 collective bargaining, the ILWU and PMA determined that it would be beneficial for the Plan to replace Cigna with a new TPA.  After the bidding for the contract came down to two companies, the negotiators requested that a neutral arbitrator select between Zenith and a competitor, BeneSys, Inc. ("BeneSys").  The arbitrator chose Zenith, which was designated to become TPA at the beginning of 2013.

20.     The conversion from Cigna to Zenith was neither seamless nor ERISA-compliant.  Among other things, Cigna stopped processing claims on December 3, 2012, a full month before the end of Cigna's duties.  As a result, instead of an anticipated 15,000 unprocessed claims upon commencement of Zenith's services as TPA, there were about 89,000 unprocessed claims at the beginning of 2013.

21.     Some of the facts relating to Cigna's failure to perform in December, 2012, are described a report by the Coast Arbitrator acting as "Impartial Umpire"

1  following an unsuccessful attempt by the ILWU Trustees to replace Zenith with

2  BeneSys in mid-2013 (the "Interim Report"), an attempt that was opposed by

3  Defendant PMA Trustees.  A copy of the Interim Report is attached hereto as

4  Exhibit 1.

5  **ZENITH AND TC3'S FAILURE TO PERFORM**

6       22.   Upon becoming TPA in 2013, Zenith was neither prepared nor

7  equipped to serve as TPA of the Plan.  According to the Interim Report, Zenith

8  lacked adequate, trained personnel to administer the Plan.  As a result, the backlog

9  of unpaid medical bills increased dramatically in early 2013.  According to the

10 Interim Report, by the summer of 2013, there were 286,000 unprocessed claims

11 from the Cigna era, and there were also growing numbers of unprocessed claims

12 from the Zenith era.  Despite the growing backlog, the Plan, and its agents Zenith

13 and ICM, continued to pre-authorize services for Plan Participants and

14 Beneficiaries.

15      23.   In addition, Zenith retained TC3 to handle screening for potential

16 fraud.  Zenith and TC3 adopted a "prepayment fraud review" system, rather than a

17 "pay and chase" system.  That approach, coupled with understaffing at TC3, has led

18 to substantial delays in processing claims, even though there is little evidence of

19 actual fraud, and in violation of ERISA's claims processing statutes and

20 regulations.  What the "prepayment fraud review" system does accomplish,

21 however, is to delay processing of legitimate claims, increasing interest income for

22 the Plan's fund and creating the misimpression that the PMA Trustees have been

23 diligent in the exercise of their fiduciary obligations and more successful at

24 administering the Plan funds than is actually the case.

25      24.   Although Zenith promised the Impartial Umpire that it had, or would,

26 put in place mechanisms to address the backlog of unpaid medical bills, in the latter

27 half of 2013 the backlog became worse, with about 90,000 new claims each month.

28

1   Zenith made substantively similar assurances to Providers in order to induce

2   Providers to render services to Plan Participants and Beneficiaries, but with the

3   actual or constructive knowledge that the Plan would not pay the claims in

4   accordance with ERISA requirements or the Plan Documents.  Plaintiffs are

5   informed and believe, and based thereon aver, that much of the resulting, growing

6   backlog stems from the combination of improperly trained, and insufficient staff,

7   plus TC3's use of the prepayment fraud review system.

8         25.    Plaintiffs are informed and believe, and based thereon aver, that Zenith

9   now routinely denies, or fails even to process, most or all new claims for services of

10  out-of-network Providers.  When a claim is denied and a request to review the

11  denial is timely submitted, Zenith either summarily denies the appeal, or simply

12  refuses to act on the appeal, in which event it is deemed denied with the passage of

13  time.  Zenith has denied Plaintiffs' initial claims, and multiple appeals therefrom,

14  such that many or all of Plaintiffs' claims remain unprocessed and unpaid.

15  Plaintiffs are informed and believe, and based thereon aver, that the Participants,

16  Beneficiaries and Providers have exhausted all internal or administrative remedies

17  or, in the alternative, that the Plan has waived or is estopped from asserting, any

18  such rights, or the exercise of internal or administrative appeals would be futile, to

19  the prejudice of Plaintiffs' rights under the applicable laws.

20        26.    Plaintiffs are informed and believe, and based thereon aver, that

21  Defendants have paid only a few claims for reimbursement for medical expenses

22  for services of out-of-network Providers in over one year, causing financial

23  hardship to Participants and Beneficiaries, who by contract or otherwise are liable

24  to Providers if the Plan does not pay.  Such intentional refusals to pay also cause

25  hardship to Providers, who are owed substantial sums, and make it increasingly

26  difficult for Providers to continue to serve Participants and Beneficiaries, because

27  of the growing realization that they will not be paid timely or at all.

28

STUBBS
ALDERTON &
MARKILES,
LLP

COMPLAINT

27.     As a result of the foregoing, Providers have the choice of not receiving payment for services, or pursuing payment from the Participants and Beneficiaries, who frequently do not have the financial ability to pay the bills and who, moreover, have coverage through the Plan.  When Providers have pursued Participants or Beneficiaries because of non-payment by Zenith or the Plan, that can materially damage the credit ratings of those Participants and Beneficiaries, making it either impossible or more expensive for such Participants and Beneficiaries to borrow money for homes, cars, their children's education or other expenses.  Because Defendants' failure to process and pay claims for pre-authorized medical services has become generally known, some Participants and Beneficiaries have foregone medical care or treatment that is covered by the Plan to avoid damage to their credit rating or additional personal liability for covered services; and some Providers will no longer provide medical services to Participants and Beneficiaries.  Thus, the failure of Zenith and the Plan to honor the obligations owing under the Plan causes great damage to Participants and Beneficiaries, far beyond "merely" the non-payment of legitimate medical bills.

## TYPES OF CLAIMS ASSERTED IN THIS ACTION

28.     When a covered patient seeks medical services from an out-of-network Provider, the Provider frequently seeks a determination from the financially responsible "payor" or its TPA that the services are "pre-authorized," *i.e.*, covered by the patient's insurance *and* medically necessary.  In addition, the Provider may also seek a determination as to the amount that the payor will allow for such services.  When the amount is determined in advance, the claim is said to be "pre-priced."  Defendants commonly pre-authorized all out-of-network claims and, until approximately 2013, pre-priced some claims as well.

29.     This action only addresses unpaid services by Providers that were pre-authorized, some of which were also pre-priced, and for which the Provider

1  obtained an Assignment.  When a Provider's service has not been pre-priced, but is

2  pre-authorized, the custom and practice of the Plan and its TPA has been to allow

3  payment of at least 80% of the Provider's billed charges.  Defendants' practice of

4  so doing establishes that the "usual, customary and reasonable" ("UCR") amount of

5  services rendered by out of network Providers is not less than 80% of billed

6  charges.  The pre-authorized services at issue here, which the Plan has not paid, are

7  all obligations of the patient or, if the patient is a minor Beneficiary, of the

8  Participant.

9                    **CLASS ACTION ALLEGATIONS**

10        30.    <u>The Class</u>.  The proposed class is comprised of all Participants in the

11  Plan and their Beneficiaries, including both current and former members of the

12  ILWU who are entitled to medical benefits, who had bills for pre-authorized

13  medical services that have not been paid for over 90 days, and the Providers who

14  rendered such services and who have valid, existing assignments of the claims,

15  rights, causes of action and remedies available to their patients.

16        31.    <u>Numerosity</u>.

17              a.     There are thousands of Participants and Beneficiaries, including

18  not only current ILWU members and their immediate families, but also  thousands

19  of retired Participants and their Beneficiaries, all of whom are entitled to benefits

20  pursuant to the Plan.

21              b.     Furthermore, Plaintiffs are informed and believe, and based

22  thereon aver, that the Plan has not paid many benefits owing to Providers or to

23  Participants for over a year, many pre-authorized and some pre-priced, such that

24  there are now due, owing and unpaid, hundreds of thousands of covered medical

25  bills for tens of thousands of Participants and Beneficiaries, totaling tens of millions

26  of dollars.

27

28

STUBBS
ALDERTON &
MARKILES,
LLP

15                                          COMPLAINT

1        c.     Plan Participants and Beneficiaries are located all along the

2 ports of the Pacific Ocean, such that they are widely dispersed and their joinder is

3 impossible.

4        d.     In many cases the claims of individual Participants and

5 Beneficiaries are too small to justify litigating separately.

6        e.     By reason of the foregoing, the class is so numerous that joinder

7 of all members is impracticable.

8        32.   <u>Commonality</u>.  As described below, the class here consists only of

9 Participants, Beneficiaries and Providers with unpaid, pre-authorized claims.

10 Accordingly, there are no extraneous issues such as whether the procedures or

11 services are covered by the Plan or were medically necessary for any specific

12 individual.  There are common questions of law and fact, including without

13 limitation:

14        a.     Did the Defendants fail to honor obligations to pay covered

15 benefits?

16        b.     Did Defendants fail to administer the Plan in accordance with

17 ERISA's or the Plan's requirements?

18        c.     Was there full, written disclosure, as Title 29, section 1133(1) of

19 ERISA requires, to every Participant or Beneficiary whose claim under the Plan

20 was denied, setting forth the specific reasons for such denial, written in a manner

21 calculated to be understood by the Participant?

22        d.     Have the PMA Trustees acted, at all times, in the best interests

23 of the Participants and Beneficiaries, or have they at times not acted in the best

24 interests of the Participants and Beneficiaries and/or in breach of their fiduciary

25 duties owed to the Participants?

26

27

28

e.      Has the Plan, Zenith or TC3 delayed, in violation of ERISA and its implementing Regulations, processing claims for services rendered by the Providers to Participants and Beneficiaries?

f.      Has the procedure for reviewing the denials or non-payment of claims been in contravention of the Plan or of ERISA?

g.      Has the procedure for reviewing the denials or non-payment of claims not been an effective mechanism for ensuring compliance with the Plan?

h.      Have the Defendants breached fiduciary duties owed by them to the Plan or to the Participants and Beneficiaries?

i.      Are there grounds for removing any Defendants from their responsibilities relating to the administration of the Plan?

j.      Is there a contract, express or implied, between any of the Providers and the Plan?

k.      Has the Plan, acting through Zenith and TC3, breached any contracts with Providers?

l.      Are there grounds for appointing a receiver to replace any or all of the PMA Trustees, PMA, Zenith and TC3 in their duties as administrators of the Plan?

m.      Does the Plan owe money to the Providers to satisfy obligations of any Participants and Beneficiaries for services rendered?

n.      If a procedure or service was both pre-authorized and pre-priced, is the amount for which it was pre-authorized and pre-priced due and owing from the Plan to the Provider?

o.      If a procedure or service was pre-authorized but not pre-priced, is the UCR due and owing from the Plan to the Provider?

p.      Did the Plan, directly or through its agents, including ICM and Zenith, make knowingly false representations to the Participants, Beneficiaries or

1   Providers when ICM pre-authorized services and the Plan subsequently failed to

2   pay the claim?

3   Based on all of the foregoing, are there common questions of law and fact?

4         33.   <u>Typicality</u>.  The claims of the Class Representatives are typical of the

5   potential class members in that:

6              a.    Some of the Class Representatives are spouses of Participants,

7   and thus are Beneficiaries, whose medical bills have not been paid, and for which

8   the Participants or such Beneficiaries are legally liable and owe to the Providers.

9              b.    Mayer Inc.'s claims are typical of all Providers' claims, in that

10   in Mayer Inc.'s case, and in all class member Providers' cases:

11              (1)   the Provider is a healthcare provider licensed by the

12   appropriate California licensing authority, and obtained a pre-authorization for the

13   services to be rendered or procedure to be performed prior to rendering such

14   services or performing such procedure;

15              (2)   such pre-authorization determined that the service or

16   procedure was covered by the Plan and that the service or procedure was medically

17   necessary, and represented that the Provider would be paid for such services;

18              (3)   the Provider rendered professional or institutional/facility

19   medical services or performed a medical procedure, consistent with the pre-

20   authorization and good professional practice whether in a doctor's office, a clinic, a

21   laboratory, an ambulatory surgery center, or a hospital;

22              (4)   the Provider or the patient submitted a claim to the Plan

23   or its agents as required;

24              (5)   the claim was denied or deemed denied by the Plan or its

25   agents;

26              (6)   either (A) the Plan's appeal process was followed and

27   resulted in a denial of the claim; (B) the Plan or its agents failed to follow the

28

1    appeal procedures such that continued attempts to obtain action from the Plan or its

2    agents was futile; (C) by reason of the conduct of the Plan or its agents, the Plan is

3    estopped from contending, or has waived any contention, that the Provider's claim

4    is barred by reason of the cessation of attempts to obtain action on the Provider's

5    claim from the Plan or its agents; or (D) or the Participant or Beneficiary or

6    Provider's participation in the administrative appeal process was excused because

7    Defendants', conduct as alleged herein, made such appeals or internal procedures

8    illusory and futile; and

9                   (7)   the Provider was not paid by the Plan for such services,

10   nor were the benefits paid to the Participants or Beneficiaries.

11           c.    All of the claims asserted by the Class Representatives were pre-

12   authorized but still were not paid, which is true of all Potential Class Members.

13           d.    The Provider Class Representative has obtained a full and

14   complete assignment of all claims, rights, causes of action and remedies from its

15   patients, such that the Provider Class Representative can assert any and all claims,

16   rights, causes of action and remedies that would otherwise be available to the

17   patients.

18           e.    All of the claims asserted by the Class Representatives either

19   were denied on review, or were not processed to conclusion on review, and thus

20   were either denied or deemed denied on review.  Each of the Class Representatives'

21   claims was internally appealed and denied, or deemed denied, by Defendants such

22   that the Class Representatives have exhausted their internal administrative

23   remedies, or such that further invocation of such processes would be futile in light

24   of the facts alleged herein.

25           f.    As to any claims for services that were pre-priced, the Provider

26   Class Representative will accept the pre-priced amount in full payment, such that

27   no issue exists as to the amount owed for pre-priced claims.  As to claims for

28

STUBBS
ALDERTON &
MARKILES,
LLP

19                                    COMPLAINT

1    services that were not pre-priced, the Provider Class Representative will accept the

2    UCR amount in full payment.  In either case, upon such payment, the Provider

3    Class Representative will release its Participants and Beneficiaries from any

4    personal liability.

5         34.    <u>Adequacy of Representation</u>.  The lawyers for the Class

6    Representatives bring a variety of talents to this matter.  Some are very experienced

7    in major class action litigation; and, others bring particular expertise in ERISA and

8    healthcare reimbursement litigation.  The Class Representatives, through their

9    counsel, will more than adequately represent all class members.

10        35.    Rule 23(b).  As hereinafter set forth, although only one of the subparts

11   of Rule 23(b) need be satisfied, here each is satisfied.

12             a.     Rule 23(b)(1).  There is a substantial risk of inconsistent

13   adjudications or double recovery.  Providers, on the one hand, and Participants and

14   Beneficiaries, on the other, cannot both obtain the same monetary relief on the same

15   claim.  Contrariwise, in the absence of a class action, the fact that a Provider, on the

16   one hand, or a Participant or Beneficiary, on the other, is unsuccessful in asserting a

17   claim will not bar a claim by the absentee.

18             b.     Rule 23(b)(2).  The relief sought herein includes equitable relief

19   applicable to the entire class, including a mandatory injunction compelling prompt

20   payment of medical bills, and the removal of the PMA Trustees, Zenith and TC3

21   based on their ongoing violations of their fiduciary duties.

22             c.     Rule 23(b)(3).  Questions of law or fact common to the class

23   predominate over questions affecting individual class members, and a class action

24   is superior to other methods of adjudication.  The common questions of law and

25   fact enumerated above are both numerous and applicable class-wide.   Plaintiffs are

26   informed and believe, and based thereon aver, that a class action is superior to other

27   methods of adjudication for all the reasons that constitute bases for satisfying Rules

28

23(b)(1) and (2).  In addition, Plaintiffs are informed and believe, and based thereon aver, that because no claims are currently being paid to out-of-network Providers, a class action is necessary to avoid class-wide damage to Participants and Beneficiaries and their Providers, and to avoid a multiplicity of actions seeking the same or similar relief.

### FIRST CLAIM FOR RELIEF

[By All Plaintiffs Against All Defendants to Recover Benefits Owing Under 29 U.S.C. §1132(a)(1)(B), for Failure to Pay ERISA Plan Benefits]

36.     Plaintiffs repeat each of the averments contained in Paragraphs 1 through 35, inclusive.

37.     This claim for relief is brought by all Plaintiffs, on behalf of themselves and all those similarly situated, against all Defendants, for failure of the Plan to pay benefits owing under the Plan documents.  ERISA, title 29, section 1132(a)(1)(B), permits Participants and Beneficiaries and their Representatives to assert claims for enforcement for failure to pay ERISA plan benefits, and specifically authorizes such actions.

38.     By reason of Defendants' failure promptly to process and pay the claims of Plaintiffs and the other members of the Plaintiff class, Defendants have breached their obligations under the Plan and their obligation under ERISA, including title 29, section 1104(a)(1)(A)(i), to pay Plan benefits to Participants and their Beneficiaries, and section 1104(a)(1)(D), to act in accordance with the Plan documents.

39.     As averred hereinabove, all of the claims that are the subject of this action are pre-authorized and, as such, the Participants and Beneficiaries or their Providers are entitled to immediate payment of any pre-priced claims, and of the UCR amount of any pre-authorized but not pre-priced claims.

40.     Plaintiffs do not now know the exact amount of their claims, but Plaintiffs are informed and believe, and based thereon aver, that the unpaid claims of the Class Representatives exceed two hundred thousand dollars, and that the unpaid claims of the entire class exceed fifty million dollars.

41.     Plaintiffs and the class members are entitled to recover pre-judgment and post-judgment interest on the balance due.  In addition, Plaintiffs have been compelled to incur attorneys' fees in order to recover the sums due to them and the other class members.  Pursuant to title 29, section 1132(g)(1), Plaintiffs are entitled to an award of reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

[By All Plaintiffs Against All Defendants for Damages Under

29 U.S.C. §§1132(a)(2), 1132(a)(3), for Breach of Fiduciary Duty]

42.     Plaintiffs repeat each of the averments contained in Paragraphs 1 through 35, 38 and 39, inclusive.

43.     Each of the Defendants is a fiduciary with respect to the Plan in that each exercises or has the right to exercise discretionary authority or discretionary control within the meaning of title 29, section 1002(21)(A), with respect to the administration of the health benefits available to Participants and Beneficiaries under the Plan, including in making decisions or failing to make decisions relating to a Participant or Beneficiary's right to benefits, and in selecting or continuing to utilize the persons or firms who make such decisions.

44.     Pursuant to title 29, section 1104, as fiduciaries, each of the Defendants is required to discharge his duties with respect to the Plan solely in the interest of the Participants and Beneficiaries and, in addition:

a.     for the exclusive purpose of:  (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;

b.      with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

c.      … and

d.      in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA].

45.    A plan providing group healthcare benefits is subject to ERISA. Among other things, such plans are required to provide the following to their members:

a.      Plan information;

b.      Operation of the Plan to maximize the benefits to Participants and Beneficiaries;

c.      Grievance and appeals procedures; and

d.      The right to sue for breaches of fiduciary duty or denial of benefits.

46.    Although in theory the Plan meets the foregoing requirements, Plaintiffs are informed and believe, and based thereon aver, that, in practice, the Plan materially fails to meet those requirements in that, *inter alia*:.

a.      The Plan does not provide many of the promised medical and health benefits.

b.      To the extent any of the Defendants provides any explanation for the routine denials of coverage, ERISA regulations set forth at 29 C.F.R. §2560.503-1(g)(1) required Defendants, *inter alia,* to state (i) the specific reason or reasons for any adverse determination, and (ii) reference to the specific plan provisions on which such adverse determination is based.  In fact, adequate explanations of benefits are not provided.

1                  c.     The grievance and appeals procedures are dysfunctional, and fail

2  to provide effective mechanisms to resolve medical coverage issues.

3                  d.     Providers are discouraged from providing out-of-network

4  services to Participants and Beneficiaries due to the prospect of long delays or

5  complete denials of coverage.

6        47.    Plaintiffs are informed and believe, and based thereon aver, that ILWU

7  and PMA have just negotiated a new collective bargaining agreement, which as of

8  the date hereof has not yet been put to a vote of the union members, but which is

9  likely to be approved; that the new collective bargaining agreement does not

10  address the failure of the Plan to pay out-of-network Providers; that the PMA

11  Trustees intend to continue to refuse to pay out-of-network Providers for their

12  services, and in particular to use such refusals to discourage the Participants and

13  Beneficiaries' use of out-of-network Providers, including the use of Dr. Mayer; and

14  that the conduct of the PMA Trustees is part of a conscious effort to accomplish

15  that objective by effectively modifying the Plan to deny the Participants and

16  Beneficiaries, and thereby the Providers, the benefits of the Plan.

17        48.    Defendants' conduct, as hereinabove alleged, constitutes a breach of

18  their respective fiduciary duties to act at all times to provide the maximum benefits

19  of the Plan to Participants and Beneficiaries.

20        49.    By reason of such breaches, as an alternative to the Second Claim for

21  Relief, and pursuant to title 29, sections 1109(a) and 1132(a)(2), Defendants are

22  liable to the Plan for the damages directly and proximately caused by their breaches

23  of fiduciary duty.

24        50.    Plaintiffs, as the parties injured by such breaches of fiduciary duty, are

25  entitled to bring this action pursuant to title 29, sections 1109(a) and 1132(a)(3) to

26  compel Defendants to make restitution to them for the losses Defendants have

27  caused the Plaintiffs, and to cease and desist from causing such damage to Plaintiffs

28

1   and other Providers, Participants and Beneficiaries in the future, including by

2   removing all obstacles to the timely processing and payment of all proper medical

3   bills.

4       51.    Plaintiffs and the class members are entitled to recover pre-judgment

5   and post-judgment interest on the balance due.  In addition, Plaintiffs have been

6   compelled to incur attorneys' fees in order to recover the sums due to them and the

7   other class members.  Pursuant to title 29, section 1132(g)(1), Plaintiffs are entitled

8   to an award of reasonable attorneys' fees.

9                    **THIRD CLAIM FOR RELIEF**

10      [By All Plaintiffs Against the PMA Trustees, for an Order Removing Each

11          of Them from Their Duties on Behalf of the Plan, Pursuant to 29 U.S.C.

12      §§1109(a) and either 1104(a)(1)(B) or 1105(a)(3), for Breaches of Fiduciary Duty]

13      52.    Plaintiffs repeat each of the averments contained in Paragraphs 1

14  through 35, and 43 through 48, inclusive.

15      53.    As set forth above, the PMA Trustees have acted contrary to the

16  interests of the Providers, Participants and Beneficiaries by, *inter alia*:

17          a.    Insisting on retaining Zenith and TC3 in the face of mounting

18  evidence of their failure to maximize benefits to the Participants and Beneficiaries;

19          b.    Opposing efforts of ILWU Trustees to remove Zenith as the

20  TPA of the Plan, and to remove TC3 from its duties, despite an increasing backlog

21  of claims, including exposing Participants and Beneficiaries to demands for

22  payment by Providers;

23          c.    Failing to provide meaningful grievance and appeal procedures;

24          d.    Acquiescing in, and thereby fostering, the ongoing denial of

25  benefits of the Plan to Participants, Beneficiaries, and their Providers; and

26

27

28

STUBBS
ALDERTON &
MARKILES,
LLP

25                                    COMPLAINT

e.      failing to ensure that the Plan and its agents administered claims and the claims payment process in compliance with ERISA regulations, including but not limited to the obligation to timely administer and pay claims.

54.     Such conduct by the PMA Trustees constitutes a continuing breach of their fiduciary duties to the Participants and Beneficiaries of the Plan.

55.     Pursuant to title 29, sections 1109(a) and 1132(a)(2), Plaintiffs hereby seek the removal of the PMA Trustees by reason of their breaches of fiduciary duty.

## FOURTH CLAIM FOR RELIEF

[By Plaintiffs Against Zenith and TC3 for an Order Removing Them from Their Duties on Behalf of the Plan, Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), and either 1104(a)(1)(B) or 1105(a)(3), for Breaches of Fiduciary Duty]

56.     Plaintiffs repeat each of the averments contained in Paragraphs 1 through 35 and 43 through 48, inclusive.

57.     As set forth above, Zenith and TC3 have acted contrary to the interests of the Providers, Participants and Beneficiaries *inter alia*, by:

a.      Failing to maximize benefits to the Participants and Beneficiaries;

b.      Failing timely to process and pay legitimate claims for medical bills; and

c.      Creating an enormous and growing backlog of claims to the detriment of the Participants and Beneficiaries and their out-of-network Providers, which has the effect, intended or otherwise, of discouraging the use of out-of-network Providers, as expressly permitted by the Plan.

58.     Such conduct by Zenith and TC3 constitutes a continuing breach of their fiduciary duties to the Participants and Beneficiaries of the Plan.

59.     Pursuant to title 29, sections  1109(a) and 1132(a)(2), Plaintiffs hereby seek the removal of Zenith and TC3 by reason of their breaches of fiduciary duty.

## **FIFTH CLAIM FOR RELIEF**

[By the Providers, Against the Plan, for Breach of Express Contract]

60.     Mayer Inc. repeats each of the averments contained in Paragraphs 1 through 35, inclusive.

61.     This claim is made by Mayer Inc. on behalf of all Providers, without regard to and independent of an Assignment, and therefore apart from any ERISA-based claims.  As such, this claim, for breach of express contract, is not preempted by ERISA.

62.     As set forth above, the Plan, through ICM, agreed to pay either the UCR amount, or the pre-priced amount, for the pre-authorized services to be performed by Providers.  That constituted an offer to pay if the Provider performed such services.

63.     The Providers accepted the Plan's offer to pay for the pre-authorized services by performing such services.  The Providers' rendition of such services in consideration for the promise to pay for the pre-authorized services constituted an acceptance by conduct of the terms of a unilateral contract.

64.     By rendering the pre-authorized services and submitting claims therefor, the Providers performed all covenants, conditions and obligations on their part to be performed, except insofar as such performance has been excused or prevented by Defendants.

65.     Despite the existence of such unilateral contracts, the Plan, in all cases at issue here, breached its promise to pay the either the pre-priced amount or the UCR amount, as the case may be, if the Providers rendered the pre-authorized services.

66.     The Providers have all been damaged by the Plan's breach of said unilateral contracts, in amounts which have not yet been determined, but which the Doctor Plaintiffs and the Institutional Plaintiffs are informed and believe, and based

1   thereon aver, are equal to the pre-priced amount, or the UCR amount, as the case

2   may be, and which, in the aggregate, are in the millions of dollars.  Mayer Inc. will

3   seek leave of this Court to set forth the exact amount of the Providers' damages

4   when the same has been ascertained.

5   67.    The Provider Plaintiffs and the class member Providers are entitled to

6   recover pre-judgment and post-judgment interest on the balance due.

7   ### SIXTH CLAIM FOR RELIEF

8   [By the Providers, Against

9   the Plan, for Breach of Implied Contract]

10   68.    Mayer Inc. repeats each of the averments contained in Paragraphs 1

11   through 35, inclusive.

12   69.    This claim is made by Mayer Inc. on behalf of all Providers, without

13   regard to and independent of an Assignment, and therefore apart from any ERISA-

14   based claims.  As such, this claim, for breach of implied contract, is not preempted

15   by ERISA.

16   70.    As set forth above, the Plan, acting through its agent ICM, or

17   otherwise, engaged in a course of conduct by which it entered into implied-in-fact

18   contracts with the Providers.

19   71.    Through its course of dealing with the Providers, the Plan, directly or

20   through its agents, caused the Providers reasonably to believe that, if the Providers

21   rendered the pre-authorized services, the Plan would pay either the UCR amount, or

22   the pre-priced amount, as the case may be, for the pre-authorized services to be

23   performed by Providers.  The Providers relied upon the Plan's course of conduct in

24   agreeing to render the services to Participants and Beneficiaries for which the

25   Providers have not been paid.

26   72.    The Providers' agreement to provide such services, coupled with the

27   Plan's course of conduct in responding to requests for pre-authorizations, created

28

STUBBS
ALDERTON &
MARKILES,
LLP

COMPLAINT

implied-in-fact contracts between the Plan and the Providers.  The essential terms of such contracts were that the Providers would render the pre-authorized services, and the Plan would pay either the pre-priced amount or the UCR amount, as the case may be, for such services.  These implied-in-fact contracts between the Plan and the Providers were and are valid and enforceable by the Providers according to their terms.

73.   By rendering the pre-authorized services and submitting claims therefor, the Providers performed all covenants, conditions and obligations on their part to be performed, except insofar as such performance has been excused or prevented by Defendants.

74.   Despite the existence of such implied-in-fact contracts, the Plan, in all cases at issue here, breached its promise to pay the either the pre-priced amount or the UCR amount, as the case may be, for the pre-authorized services.

75.   The Providers have all been damaged by the Plan's breach of said implied-in-fact contracts, in amounts which have not yet been determined, but which Mayer Inc. is informed and believes, and based thereon avers, are equal to the pre-priced amount, or the UCR amount, as the case may be, and which, in the aggregate, are in the millions of dollars.  Mayer Inc. will seek leave of this Court to set forth the exact amount of the Providers' damages when the same has been ascertained.

76.   The Providers are entitled to recover pre-judgment and post-judgment interest on the balance due.

### SEVENTH CLAIM FOR RELIEF

[By the Providers, Against All Defendants, for Fraud in the Inducement]

77.   The Mayer Inc. repeats each of the averments contained in Paragraphs 1 through 35 and 43 through 48, inclusive.

STUBBS
ALDERTON &
MARKILES,
LLP

29                                    COMPLAINT

78.     This claim is brought on behalf of all Providers who rendered services to Participants and Beneficiaries after Defendants specifically pre-authorized such services.  Further, this claim is without regard to and independent of an Assignment, and therefore apart from any ERISA-based claims.  As such, this claim, for fraud in the inducement, is not preempted by ERISA.

79.     As averred hereinabove, Zenith, and the Plan's authorized agents, including ICM, with the knowledge and consent of Defendants, represented to the Providers that the Plan had determined that the proposed services of the Providers were medically necessary, pre-authorized and were covered by the Plan, either at a pre-priced amount, or at 80% or more of a UCR amount, and that if the Providers rendered such services to the Participants and Beneficiaries, the Providers promptly would be paid therefor.  The representations by Defendants were made in hundreds of individual claims the identities of which are known only to Defendants, and were made to the Providers, and their Participants and Beneficiaries, on a continuous basis from 2012 through present.  The misrepresentations all took the following form or were substantially similar representations:

> "An Innovative Care Management registered nurse has
> reviewed and authorized your requested medical services
> under the terms of the Coastwise Indemnity Plan subject
> to the provisions contained in the following paragraph.
> Please keep this letter as your documentation for the
> services and authorizations given regarding your case."

80.     The Providers are informed and believe, and based thereon aver, that Defendants intended that the Providers rely upon the representation that the proposed services were medically necessary, covered and pre-authorized, and that the Providers would be paid timely if they rendered such pre-authorized services.

COMPLAINT

STUBBS
ALDERTON &
MARKILES,
LLP

81.     The Providers are informed and believe, and based thereon aver, that in fact, Defendants knew that they were not processing claims, either timely or, later, at all, and that as a result, the Providers would not be paid timely, or at all. Moreover, Defendants were aware that there was no adequate procedure in place for resolving grievances and appeals relating to subsequent denials of pre-authorized services, such that if a pre-authorized claim was later denied, as a practical matter, the Providers would not be paid promptly, and might not be paid at all, even though the services were pre-authorized.

82.     By reason of the foregoing, the promises of payment implied by the pre-authorizations were false, and known to be false by Defendants when they were made.

83.     After receiving the pre-authorizations, the Providers reasonably and justifiably relied on such pre-authorizations in performing the pre-authorized services.  Further, such pre-authorizations were material, in that the Providers would not have rendered the pre-authorized services had such pre-authorizations not been made, or had the Providers known they would not be paid promptly therefor.

84.     Defendants' conduct constitutes fraud in the inducement.

85.     Defendants' fraud in the inducement directly and proximately caused damage to the Providers, in that the Providers were induced to render medical services to the Participants and Beneficiaries, for which the Providers have not been paid by the Plan.  The Providers do not know the exact amount of said damages, but the Providers are informed and believe, and based thereon aver, said damages are in the millions of dollars.

86.     The Providers are informed and believe, and based thereon aver, that in falsely representing to the Providers that the Providers would be paid timely and either in the pre-priced amount or at 80% or more of billed charges or the UCR,

1   some or all of the Defendants were guilty of fraud, oppression or malice such that,

2   in addition to their actual damages, the Providers are entitled to damages for the

3   sake of example and by way of punishing said Defendants, in an amount to be

4   determined.

5       87.    The Providers are entitled to recover pre-judgment and post-judgment

6   interest on the balance due.

7                        **EIGHTH CLAIM FOR RELIEF**

8               [By the Providers, Against the Plan, for Equitable Estoppel]

9       88.    Mayer Inc. repeats each of the averments contained in Paragraphs 1

10  through 35 and 43 through 48, inclusive.

11      89.    This claim is brought on behalf of all Providers who rendered services

12  to Participants and Beneficiaries after Defendants specifically pre-authorized such

13  services.  Further, this claim is without regard to and independent of an

14  Assignment, and therefore apart from any ERISA-based claims.  As such, this

15  claim, for equitable estoppel, is not preempted by ERISA.

16      90.    As set forth hereinabove, Defendants intended that the Providers rely

17  upon the determinations of medical necessity, the representations of coverage, the

18  authorizations to perform the medical services, and the promises of payment, either

19  in a pre-priced amount, or as 80% or more of the UCR amount, as the case may be.

20      91.    The Providers did in fact reasonably and justifiably rely on the

21  representations by the Defendants or their agents, in rendering the pre-authorized

22  services.

23      92.    By reason of the foregoing, Defendants are estopped from contending

24  that the services they authorized are not payable due to lack of authorization or for

25  any other reason, and are estopped from refusing to pay either the pre-priced or the

26  UCR amount, as the case may be, for such pre-authorized services.

27

28

STUBBS
ALDERTON &
MARKILES,
LLP

COMPLAINT

93.     Mayer Inc. does not know the exact amount that the Providers are owed by the Plan, but Mayer Inc. is informed and believes, and based thereon avers, said amount is in the millions of dollars.

94.     The Providers are entitled to recover pre-judgment and post-judgment interest on the balance due.

### NINTH CLAIM FOR RELIEF

[By the Providers, Against the Plan, in Quasi-Contract, for Services Rendered]

95.     Mayer Inc. repeats each of the averments contained in Paragraphs 1 through 35, 71 and 73, inclusive.

96.     This claim is brought on behalf of all Providers who rendered services to Participants and Beneficiaries after Defendants specifically pre-authorized such services.  Further, this claim is without regard to and independent of an Assignment, and therefore apart from any ERISA-based claims.  As such, this claim, in quasi-contract, for services rendered, is not preempted by ERISA.

97.     The Providers rendered pre-authorized medical services to the Participants and Beneficiaries, at the special instance and request of the Defendants, and for which Defendants agreed that the Providers would be paid, either the pre-priced amount, if any, or else the UCR amount.

98.     The Providers were not paid the reasonable value, or anything at all, for the services performed at the request of Defendants.

99.     There is now due, owing and unpaid to the Providers from Defendants the reasonable value of the services rendered by the Providers at Defendants' request.  Mayer Inc. does not know the exact amount that the Providers are owed for such services, but Mayer Inc. is informed and believes, and based thereon avers, that said amount is in the millions of dollars.

100.    The Providers are entitled to recover pre-judgment and post-judgment interest on the balance due.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment, that:

1.     The Plan pay to the Providers the pre-priced or UCR amount for all pre-authorized services performed by the Providers for the Participants and Beneficiaries;

2.     Defendants, and each of them, reimburse the Plan for losses sustained by the Plan, pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), in an amount to be proven at trial, by reason of Defendants' breaches of fiduciary duty;

3.     Defendants, and each of them, provide equitable relief to Plaintiffs, pursuant to 29 U.S.C. §§1109(a) and 1132(a)(3), in an amount to be proven at trial, for losses sustained by Plaintiffs as a result of Defendants' breaches of fiduciary duty;

4.     The PMA Trustees, and each of them, be removed as trustees of the Plan;

5.     Zenith and TC3 be removed as agents of the Plan;

6.     Defendants, their officers, agents, servants, employees, independent contractors, attorneys, parents, subsidiaries, and related companies and all persons acting for, with, by, through, or under them, be temporarily, preliminarily, and thereafter permanently enjoined and restrained from:

a.     Interfering with or delaying the payment to the Providers for all pre-authorized services;

b.     Interfering with or delaying payment to the Providers of the full amount of all pre-priced services; and

c.     For services that have not been pre-priced, interfering with or delaying payment of the UCR charges for such services;

7.     Defendants pay the Providers the full amount of all unpaid fees for pre-authorized services performed for Participants and Beneficiaries, in an amount to be proven at trial;

8.     The Providers recover damages against the Plan, for breach of express contract, in an amount to be proven at trial;

9.     The Providers recover damages against the Plan, for breach of implied contract, in an amount to be proven at trial;

10.    The Providers recover damages against Defendants, and each of them, for fraud in the inducement, in an amount to be proven at trial;.

11.    The Providers recover damages against Defendants, for the sake of example and by way of punishing Defendants, for oppression, fraud or malice in committing fraud in the inducement, in an amount to be proven at trial;

12.    Defendants be required to specifically perform and comply with their obligations under ERISA and the Plan, including any obligations to provide and pay for all medical services to which the Participants and their Beneficiaries are entitled under the Plan;

13.    Defendants provide restitution to the Participants and Beneficiaries, for injury to any Participant or Beneficiary's credit rating or other injury caused by Defendants, in an amount to be proven at trial;

14.    Plaintiffs recover interest in accordance with law, at the maximum legal rate allowable;

15.    Defendants be ordered to pay Plaintiffs' attorneys' fees, costs, and disbursements incurred in this action, in an amount to be proven at trial; and

16.    The Court order that Plaintiffs recover such other and further relief as the Court may deem appropriate, so that the Participants and their Beneficiaries derive the full benefit of the medical coverage to which they are entitled under the Plan and ERISA, and so that the Providers be paid for the medical services they

1  rendered.

2

3  DATED: February 26, 2015      STUBBS ALDERTON & MARKILES, LLP
                                 McCLELLAND ADVOCACY
4                                ESMERALDA ALFARO, INC.
                                 ADVANCED LAW GROUP, PC

5

6                                By

7                                   Michael A. Sherman
                                    Attorneys for Plaintiffs

8

9

10  Counsel Continued from        ESMERALDA ALFARO, INC.
    Caption Page                  ESMERALDA A. ALFARO (BAR NO. 223000)
11                                EALFARO@ALFAROPLC.COM
                                  611 SOUTH OLIVE STREET
12                                LOS ANGELES, CA 90014
                                  TELEPHONE: 213.623.5758
13                                FACSIMILE: 213.623.5748

14                                ADVANCED LAW GROUP, PC
                                  SAHAR ADABZADEH (BAR NO. 292343)
15                                2601 AIRPORT DRIVE, SUITE 380
                                  TORRANCE, CA 90505
16                                TELEPHONE: 310.404.9232
                                  FACSIMILE: 888.410.9263
17                                ATTORNEYS FOR PLAINTIFFS

18

19

20

21

22

23

24

25

26

27

28

STUBBS
ALDERTON &
MARKILES,
LLP

36                                                    COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs request trial by jury on all issues so triable.

DATED: February 26, 2015     STUBBS ALDERTON & MARKILES, LLP
McCLELLAND ADVOCACY
ESMERALDA ALFARO, INC.
ADVANCED LAW GROUP, PC

By _____
Michael A. Sherman
Attorneys for Plaintiffs